# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00282-COA

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF AUDIE BELLE ENGLISH, DECEASED: ELIZABETH JUNE ENGLISH, EXECUTRIX | APPELLANT |

v.

| | |
|---|---|
| REGIONS BANK | APPELLEE |

| | |
|---|---|
| DATE OF JUDGMENT: | 10/04/2012 |
| TRIAL JUDGE: | HON. FRANKLIN C. MCKENZIE JR. |
| COURT FROM WHICH APPEALED: | JONES COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | SAMUEL STEVEN MCHARD |
| | PAUL MANION ANDERSON |
| ATTORNEYS FOR APPELLEE: | BENJAMIN MCRAE WATSON |
| | J. STEVENSON RAY |
| | LEANN W. NEALEY |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | MOTION FOR SUMMARY JUDGMENT GRANTED |
| DISPOSITION: | REVERSED AND REMANDED - 08/25/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BARNES, J., FOR THE COURT:**

¶1. In 1990, Audie Belle English, along with three of her relatives, purchased a $75,000 certificate of deposit (CD) from Sunburst Bank in Laurel, Mississippi. The CD's terms noted that the CD would automatically renew every six months at the bank's prevailing rate of interest at the time of renewal. Any of the CD holders could cash out the CD without permission from the others, as long as the original certificate of deposit was presented to the

bank. Almost twenty years after the CD's issuance, the last remaining CD holder, Audie Belle, presented the original certificate for redemption at the bank, now titled Regions Bank.[1] However, because Regions could not locate any records relating to the CD, it refused to redeem the CD, concluding that the CD must have already been cashed out.

¶2. English passed away a short time later, and her daughter-in-law and executrix, Elizabeth June English, sued Regions on behalf of Audie Belle's estate, seeking payment of the CD plus interest. After a hearing on the matter, the Jones County Chancery Court granted summary judgment in favor of Regions. Elizabeth now appeals.

¶3. Finding that Regions is not entitled to a judgment as a matter of law, we reverse the judgment and remand for further proceedings consistent with this opinion.

**STATEMENT OF FACTS**

¶4. On October 26, 1990, Audie Belle (referred to on the CD as Mrs. Dillard English), Helen Masters, Denton English, and Lindsey English purchased a $75,000 CD from Sunburst Bank. The CD was issued for a six-month term and reached maturity on April 24, 1991. According to its terms, upon maturity the CD would be payable to "Mrs. Dillard English *or* Helen Masters *or* Denton English *or* Lindsey English *or* any of them *or* the survivor." (Emphasis added). Thus, the CD could be redeemed by one or more persons without the others' knowledge or permission. Pursuant to the terms printed on the front of the CD, redemption was proper "upon presentation and surrender of this Certificate properly endorsed

[1] Between the time of the CD's issuance in 1990 and Audie Belle's attempt to redeem the CD in 2008, Sunburst Bank had merged with and been acquired by several other banking institutions. It now operated as Regions Bank.

at said bank . . . ." However, a lost-CD policy existed throughout the relevant time period under which the CD holders could request a re-issuance of the original certificate. The terms of the CD also stated that interest would accrue and be paid monthly into a designated credit-checking account at the rate of 7.20% until April 24, 1991, the original date of maturity. After that date, the CD was to automatically renew every six months at the bank's prevailing rate of interest at the time of each renewal.

¶5.    In June 2008, Audie Belle, the last surviving member of the CD's payees, presented the original certificate for redemption at the issuing bank, now owned by Regions. Regions could not identify any bank records related to the CD, other than the original certificate presented by Audie Belle. At the time, Regions employed a closed-records retention policy of six years – three years longer than minimum required by banking regulations. Hence, Regions refused to the redeem the CD, presuming that because no records existed, the CD must have been previously redeemed.

¶6.    Shortly thereafter, Audie Belle died, and Elizabeth, her executrix, filed a complaint against Regions on behalf of Audie Belle's estate on May 4, 2010. The complaint asserted a breach-of-contract claim and sought damages in the amount of $75,000 (the face value of the CD) and $247,962 for accumulated interest during the CD's lifetime. The interest was calculated based on the bank's initial prevailing interest rate of 7.20% cited on the original CD.

¶7.    Regions requested Audie Belle's tax records from 1990 to the present. However, the only tax records submitted were a 2007 federal tax record and a 1991 IRS record. The 1991

3

IRS record reflected that monthly interest payments from the CD in question were paid to Audie Belle in the amount of $4,533.91, but the 2007 tax record did not indicate any CD interest paid to Audie Belle from any bank.

¶8.     Both Elizabeth and Regions filed motions for summary judgment. After a hearing on the motions, the chancellor found Regions's argument – that the absence of any bank records regarding the CD created a legal presumption of payment – to be persuasive and granted Regions's motion for summary judgment based on its affirmative defenses of laches, payment, and statute of limitations.

¶9.     Elizabeth now challenges the chancellor's ruling on appeal, arguing that Regions failed to put forth any evidence in support of its affirmative defenses. Finding that Regions provided no direct evidence that the CD had been previously redeemed by another owner and, therefore, is not entitled to a judgment as a matter of law, we reverse the judgment and remand for further proceedings consistent with this opinion.

**DISCUSSION**

¶10.   The Mississippi Supreme Court has held that an appellate court's review "of a trial court's grant of a summary judgment motion is de novo." *Stuckey v. The Provident Bank*, 912 So. 2d 859, 864 (¶8) (Miss. 2005) (citing *Miller v. Meeks,* 762 So. 2d 302, 304 (¶3) (Miss. 2000)). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56. "[J]udgments as a matter of law present both the trial

4

court and the appellate court with the same question – whether the evidence, as applied to the elements of a party's case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated." *White v. Stewman*, 932 So. 2d 27, 32 (¶11) (Miss. 2006).

> In this way, summary judgment roots out mere accusation and conjecture in favor of merit and ultimately functions to force a non-movant to present some modicum of material evidence. While summary judgment is not a substitute for the trial of disputed fact issues, it is an effective rule of procedure which forces parties to produce evidence sufficient to convince a trial court that a genuine issue of material fact exists.

*Stuckey*, 912 So. 2d at 866 (¶12) (citation omitted).

¶11.    Although English was the initial movant for summary judgment, Regions also filed a separate motion for summary judgment. Upon review, we find English provided the chancery court with sufficient evidence of a genuine issue of material fact as to whether the CD had been redeemed. Specifically, she provided evidence that the original CD, which stated that redemption was proper "upon presentation and surrender of this Certificate properly endorsed at said bank," was still in Audie Belle's possession. English did not "rest upon mere allegations, but . . . set forth specific facts showing that there is a triable issue." *See* M.R.C.P. 56(e). The Mississippi Supreme Court has held:

> An issue of fact may be present where there is more than one reasonable interpretation that may be given undisputed testimony, where materially differing but nevertheless reasonable inferences may be drawn from the uncontradicted evidentiary facts; or when the purported establishment of the facts has been sufficiently incomplete or inadequate that the trial judge cannot say with reasonable confidence that the full facts of the matter have been disclosed.

*Am. Legion Ladnier Post No. 42 Inc. v. City of Ocean Springs*, 562 So. 2d 103, 106 (Miss. 1990) (citation omitted). English, as the "party opposing summary judgment[,] is entitled to

5

all reasonable inferences from the evidence." *See Mayer v. Angus*, 83 So. 3d 444, 449 (¶12) (Miss. Ct. App. 2012) (citing *Rhaly v. Waste Mgmt. of Miss. Inc.,* 43 So. 3d 509, 516 (¶22) (Miss. Ct. App. 2010)).

¶12.    Regions, on the other hand, submitted no direct proof that the CD had been cashed out by another owner.  Rather, it claimed in its interrogatory responses that "the *absence of any information* concerning this [CD] demonstrates that it was previously redeemed by one of its owners." (Emphasis added).[2]  In its motion for summary judgment, Regions cited *Krawitt v. Keybank*, 871 N.Y.S.2d 842, 844 (N.Y. Sup. Ct. 2008), which recognized that New York has "a legal presumption of payment after the lapse of twenty years between the right to enforce an obligation and an attempt to do so."  That case held:

> "The presumption of payment from a great lapse of time is founded upon the rational ground that a person naturally desires to possess and enjoy his own, and that an unexplained neglect to enforce an alleged right, for a long period, casts suspicion upon the existence of the right itself."  *Bean v. Tonnele*, 49 Sickels 381, 386 (1884).
>
> To rebut the presumption, clear and convincing evidence of nonpayment is required (*see Bean,* at 385-86; *Boscowitz v. Chase Nat. Bank,* 202 Misc. 1016, 1019-20, 111 N.Y.S.2d 147 [1952] ).  An inference of payment may be found to apply where the lapse of time is less than twenty years, and, depending upon other circumstances of the case, an inference may constitute conclusive proof of payment (*Oneida National Bank & Trust Co. v. Kranz,* 70 Misc.2d 595, 598, 334 N.Y.S.2d 336 [1972]; *Katzman* [*v. Citibank,* 2007 WL 2325857 (N.D.N.Y)].  Other circumstances which may support an inference of payment include the strength of any other evidence tending to support payment, and the overall length of time passed (*see id.*).

*Id.*  The chancellor found this "reasoning in *Krawitt* to be persuasive," and granted summary

---

[2] This absence of information referred to by Regions is the lack of any Internal Revenue Service Form 1099 reporting interest to the CD holder.

judgment for Regions.

¶13. However, Mississippi has no such long-standing legal presumption of payment under these circumstances.[3] Furthermore, *Katzman*, one of the cases cited in *Krawitt*, was reversed by the United States Court of Appeals for the Second Circuit and closely mirrors the facts presented in this case. *Katzman* involved a widow, Eva Katzman, who brought a breach-of-contract action against Citibank seeking payment of a twenty-year-old CD issued to her late husband. *Katzman v. Citibank*, 298 Fed. App'x 81, 82 (2d Cir. 2008). One of the CD's terms and conditions stated the CD must be surrendered to withdraw the funds on or before the maturity date. *Id*. The lower court granted of summary judgment in favor of the bank due to the long lapse of time since the CD's issuance. *Katzman*, 2007 WL 2325857, at *4. The Second Circuit, however, reversed and remanded, concluding:

> Although Citibank presented competent evidence . . . , including its policies and procedures for record retention, that, "if a Citibank customer who is identified by an officer or employee of a branch came to the branch without a Savings Certificate, the Savings Certificate would have been paid to the customer and the appropriate notation made on the account," that evidence was inconclusive because it was directly contradicted by the express language of Citibank's CD stating that, in order to withdraw the entire balance, *the CD must be surrendered to Citibank*. Absent explicit evidence that Katzman's CD was paid to her husband or her in the way described by the operations manager, this conflicting evidence of Citibank's own making concerning the way Citibank pays its CDs creates a genuine issue of material fact. Weighing that evidence is not the function of the court as it considers the summary judgment motion.
>
> Although Katzman's only record evidence was, in essence, the CD itself, it was Citibank's burden to demonstrate that no genuine issues of material fact existed with respect to that CD, the authenticity of which does not appear to

---

[3] *Krawitt* is also factually distinguishable in that the person attempting to redeem the CD was not one of the original CD purchasers, as is the case here.

7

be disputed by Citibank. *In light of the CD's express language that the CD had to be surrendered to Citibank in order to withdraw the entire balance*, Citibank's statement that "such was not necessarily the case" does not establish conclusively that the relevant account had been paid out; rather, it creates a genuine issue of material fact entitling Katzman to have a jury decide how much weight, if any, to give to that evidence and what inferences, if any, to draw from that evidence at trial.

*Katzman*, 298 Fed. App'x at 83-84 (emphasis added).

¶14.    Similarly, we find Regions's failure to furnish any direct evidence as to where the proceeds went and who had received them, combined with the evidence that Audie Belle had never surrendered the original CD, created a genuine issue of material fact for the chancery court to consider and was not an issue that entitled Regions to a judgment as a matter of law.

¶15.    Accordingly, we reverse the chancery court's judgment and remand for further proceedings. As the chancery court did not make any findings of fact regarding the merits of English's claims, we do not address the merits of English's various arguments on appeal. *See Richardson v. Norfolk S. Ry. Co.*, 923 So. 2d 1002, 1007 (¶9) (Miss. 2006) (In reviewing a ruling on a Rule 56 motion, an appellate court "must only determine if there are issues to be tried; we need not actually try those issues.") (citation omitted).

¶16.    Recognizing that the chancellor, on remand as finder of fact, might very well determine that the CD was redeemed without the presentation of the original certificate by Audie Belle and, thereby, achieve the same result, one might argue that our disposition of this case is "much ado about nothing."[4] The Mississippi Supreme Court, however, has indicated that Rule 56 of the Mississippi Rules of Civil Procedure must be construed the same in

---

[4] William Shakespeare, "Much Ado about Nothing."

chancery court as in circuit court. *Dennis v. Searle*, 457 So. 2d 941, 944 (Miss. 1984) (overruled on other grounds).[5] As discussed, Regions never provided any direct proof that the CD proceeds were paid to any of the other owners of the CD. In its order granting Regions's motion for summary judgment, the chancery court stated: "There were four owners that *could have* redeemed [the CD] at any time without the others knowing." (Emphasis added). The dissent by Judge Ishee is also unable to state with any confidence what occurred to the CD proceeds, commenting: "Any of the other CD holders *could have* previously redeemed the CD in question without Audie Belle's consent or the original certificate, according to *Ravenstein*. *Alternatively*, one of the other CD holders *could have* employed Regions's lost-CD policy and had an original certificate re-issued." (Emphasis added). Thus, the evidence here was not "so indisputable, or so deficient, that the necessity of a trier of fact [was] obviated." *White*, 932 So. 2d at 32 (¶11). Regions is not entitled to a judgment as a matter of law.

¶17. Addressing Regions's motion to strike portions of English's reply brief, as the information that Regions requests be stricken was not relied on by this Court in our analysis and determination, we dismiss the motion as moot.

¶18. **THE JUDGMENT OF THE CHANCERY COURT OF JONES COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS**

---

[5] *See also* Jeffrey Jackson, 13 *Encyclopedia of Mississippi Law* § 13:183 (2014) (stating that the supreme court has advised that a chancery court should use "great care and caution" in granting summary judgments "when a hearing on the merits can in all likelihood be heard as expeditiously as the time consumed in applying for, resisting and ruling upon a motion for summary judgment." (quoting *McMullan v. Geosouthern Energy Corp.*, 556 So. 2d 1033, 1036 (Miss. 1990))).

9

**CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., IRVING, P.J., CARLTON, FAIR AND JAMES, JJ., CONCUR. ISHEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., MAXWELL AND WILSON, JJ. WILSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., AND MAXWELL, J.; ISHEE, J., JOINS IN PART.**

**ISHEE, J., DISSENTING:**

¶19.    With respect to the majority, I must dissent. In its analysis, the majority grounds its opinion in *Katzman v. Citibank*, 298 Fed. Appx. 81, 2008 WL 4810481 (2d Cir. 2008). While that case may be factually similar to the one at hand, it is permissive authority only since it stems from New York. Indeed, the majority fails to cite any mandatory authority in its analysis for its proposition that the evidence warrants a reversal.

¶20.    By contrast, both this Court and the Mississippi Supreme Court have provided a framework of authority under which we are required to review this case – a fact acknowledged by both Elizabeth and Regions in their briefs on appeal. Elizabeth cited *Epperson v. SOUTHBank*, 93 So. 3d 10 (Miss. 2012), in support of her argument that the terms of the CD required that the original certificate, which she delivered to Regions in 2008, be presented for redemption – meaning that Regions should have redeemed the CD, and any hypothetical redemptions prior to the one attempted by Audie Belle in 2008 would have been improper since the original certificate would not have been presented. In *Epperson*, three CDs were purchased in the name of "Juanita Rickman or Carolyn Epperson or Randy Thompson," and one CD was purchased in the name of "Juanita Rickman [payable on death] to Carolyn Epperson and Randy Thompson." *Id.* at 13 (¶5). The terms on the original

10

certificates dictated that in order to withdraw the CD's funds prior to maturity, all named CD holders must sign a signature card accompanying the original certificates, and the original certificates must be presented with the completed signature card. *Id.* Rickman kept all four original certificates in her possession. *Id*. at 15 (¶9).

¶21. Some time later, Epperson claimed Rickman produced a blank index card for Epperson to sign, which purportedly secured Epperson's name on the CDs. *Id*. at 13 (¶5). Epperson eventually had a falling out with Rickman and Thompson. *Id*. at 14 (¶7). In a later visit to the bank, Epperson discovered that one of the CDs had been withdrawn prior to its maturity. *Id*. at (¶8). The record reflected that the blank index card signed by Epperson was actually a signature card that Rickman and Thompson had used to withdraw the CD's funds prematurely. *Id*. Epperson immediately asked a bank official if she could withdraw her part of the remaining CDs, but was told she had to present the original certificates in order to withdraw the money still in the CDs. *Id*. Approximately four months later, Rickman and Thompson closed the remaining three CDs and consolidated them into one new CD to the exclusion of Epperson. *Id*. at 14-15 (¶9).

¶22. Epperson filed a complaint against the bank alleging that the bank breached its contract with her by failing to give her the funds from the CDs when she originally asked for them. *Id*. at 15 (¶10). The bank was granted summary judgment, and Epperson appealed. *Id*. at (¶12). The case was originally presented to this Court on appeal. *Id*. at (¶13). We reversed and rendered the circuit court's judgment and found that the CDs' terms did not require presentation of the original certificates. *Id*. We then awarded Epperson the value

11

of the CDs as of the date on which she attempt to redeem them from the bank, plus interest. *Id*.

¶23. The supreme court later granted certiorari and reversed this Court's judgment. *Id*. at 20 (¶31). The supreme court clarified that an analysis of a CD's terms should be done under the framework of contractual law. *Id*. at 16 (¶15). However, the supreme court held that "[i]n a summary judgment case, the reviewing Court need not go through the entire three-step [contractual] analysis; the Court should determine only whether the contract is ambiguous." *Id*. at 17 (¶20). "If the contract is unambiguous, the intention of the contracting parties should be gleaned solely from the wording of the contract and parole evidence should not be considered." *Id*. (quotation omitted). If, however, the contract is found to be ambiguous, "the matter should . . . [be] remanded to the trial court. Contractual ambiguities are questions to be determined by the trier of fact." *Id*. at 18 (¶22) (citations omitted).

¶24. Regions countered Elizabeth's argument with *Ravenstein v. Community Trust Bank*, 141 So. 3d 396 (Miss. Ct. App. 2013). The supreme court originally granted certiorari in *Ravenstein* on February 6, 2014, but dismissed the grant of certiorari four months later. In *Ravenstein*, Tammala (Tammy) and Ronald (Ronnie) Ravenstein were listed as joint owners of four CDs issued by Community Trust Bank, formerly known as Madison County Bank. *Id*. at 399 (¶1). The terms of each CD allowed for one party's signature to transfer the ownership of the CDs without the knowledge or consent of the other party. *Id*. However, the terms of the CDs also required that the original certificates be presented in tandem with at least one party's signature in order to withdraw or transfer ownership. *Id*. at 399-400 (¶5).

12

Specifically, the CD stated: "You must present this certificate when you request a withdrawal or a transfer." *Id.* Tammy maintained possession of the original certificates. *Id.* at 400 (¶ 6).

¶25. Sometime after issuance of the CDs, Ronnie signed a request asking that the bank transfer all four CDs into his sole ownership. *Id.* However, he did not present the original certificates to the bank when he made his request. *Id.* Despite Ronnie's failure to present the original certificates, the bank granted the transfer of ownership, and Ronnie pledged all four CDs as collateral for a loan on which he eventually defaulted. *Id.* at (¶¶6-7). The bank then applied the CDs' entire values to the balance of the loan. *Id.* at (¶7).

¶26. Tammy sued the bank, claiming the bank breached its contract with her under the terms of the CDs by failing to require that Ronnie present the original certificates at the time he requested a transfer of ownership. *Id.* at 399 (¶2). After summary judgment was granted to the bank, Tammy appealed. *Id.* at 400 (¶8).

¶27. On appeal, we held that the requirement that the original certificates be presented to the bank in order to withdraw or transfer the CDs "imposes an obligation on the depositors to present the certificates. It does not impose an obligation on the [b]ank to require the certificates be presented." *Id.* at 402 (¶20). We further stated:

> The obligation to present the certificates to the [b]ank was for the [b]ank's protection, as part of its right to restrict early withdrawals. This provision gave the [b]ank the *right* to refuse to consent to Ronnie's request for transfer because he did not present the certificates. But it did not obligate the [b]ank to require presentment. . . . Thus, by not requiring presentment, the [b]ank was waiving a contractual protection, not breaching a contractual obligation. . . . Tammy concedes that only one signature was required and Ronnie was authorized to give his signature. Assured that Ronnie was authorized to make

13

the transfers without Tammy's agreement, the [b]ank could waive the presentment requirement and consent to the transfers without breaching any contractual obligation to Tammy.

*Id*. at 402-03 (¶¶20-22).

¶28. Accordingly, Regions asserts that the terms of the CD were unambiguous, and that it was never under a contractual obligation to require presentment of the CD in order to effect redemption. Hence, Regions claims there was no breach of contract. Furthermore, Regions notes that the lack of bank records for the CD proves the CD must have been redeemed previously, even though Audie Belle held the original certificate.

¶29. I agree. The terms of the CD reference "prior redemption," or early withdrawal, and state that the CD would be redeemable "upon presentation of this Certificate properly endorsed at said bank, subject to prior redemption provisions detailed on reverse side hereof." The redemption provisions on the reverse side of the CD state:

> The depositor may not withdraw all or any part of his time deposit prior to maturity except with the consent of the bank which may be given only at the time such a request for withdrawal is made, and that if the bank gives its consent at that time, a penalty will be assessed on the amount withdrawn.

This language is very similar to the CD terms seen in *Ravenstein*. In accordance with our holding in *Ravenstein*, Regions was under no obligation to require presentment of the CD since that requirement was a protection to Regions, not the CD holder.

¶30. Moreover, as we opined in *Ravenstein*, the avenue for protection of a joint owner of a CD is not merely to possess the CD, but to require each owner's signature for any withdrawal or transfer. *Id*. at 402 (¶22). Any of the other CD holders could have previously redeemed the CD in question without Audie Belle's consent or the original certificate,

14

according to *Ravenstein*. Alternatively, one of the other CD holders could have employed Regions's lost-CD policy and had an original certificate re-issued.

¶31. Elizabeth asserts that Regions's lack of records regarding the CD should invoke a requirement that the bank redeem the CD since Regions has no direct documentation that the CD has been redeemed. I disagree. The record reflects that when interest is paid on an account, banks are required to submit a Form 1099 to the IRS showing the details of the payment. The bank must also retain a copy of the Form 1099 for the account's records. Moreover, if an account is still active or payable by a bank, the bank is required to maintain all records on the account. According to Mississippi Code Annotated section 81-5-7 (Supp. 2014) and regulations imposed by the Mississippi Commissioner of Banking and Consumer Finance, banks must maintain bank records for closed accounts for a minimum period of three years from the date of the account's most recent financial transaction. After the three-year period has expired, all records related to closed accounts may be destroyed – including Form 1099 documents. Regions maintained closed-account records for three years longer than the required minimum. Records relating to open accounts must be maintained indefinitely.

¶32. There is no evidence in the record to suggest that Regions destroyed records relating to the CD prior to the allowable time for their destruction under State law and banking regulations. The fact that records relating to the CD are not present in Regions's records for open accounts does not necessarily reflect an error on the part of Regions, nor does it require Regions to redeem the CD. Conversely, the comment to Mississippi Rule of Evidence 803(7)

15

says: "A record's failure to mention a matter which would ordinarily be contained in it is admissible to prove the nonexistence of the matter." Hence, the lack of records relating to the CD provides a strong inference that the account had been closed for more than six years prior to the attempted redemption in 2008. Additionally, Elizabeth only produced two tax records, despite Regions's request for Form 1099 and federal income tax documents from 1991 through 2008, and neither record proves that the CD was in existence at any time after 1991.

¶33. While the majority's conclusion is supported by convincing authority, it is permissive authority gleaned from outside of our body of law, and should not be relied upon absent existing mandatory authority. *Epperson* and *Ravenstein* remain valid, mandatory authority in this state. Having analyzed this case pursuant to *Epperson* and *Ravenstein*, it is clear to me that I must dissent from the majority and agree with the chancery court's decision.

**GRIFFIS, P.J., MAXWELL AND WILSON, JJ., JOIN THIS OPINION.**

**WILSON, J., DISSENTING:**

¶34. I agree with Judge Ishee's analysis and conclusion that the chancery court properly granted summary judgment in favor of Regions because there is no genuine issue of material fact. I write separately only to make a few brief points that I believe support this conclusion.

¶35. First, while it is true that this appeal involves a set of facts not previously addressed by a Mississippi appellate court, and while courts in other states have resolved similar cases with opinions that we could look to for guidance, this appeal ultimately turns on a relatively straightforward application of Mississippi precedent and Rule 56 of the Mississippi Rules

of Civil Procedure. The CD at issue in this case could be redeemed by any one of the four named payees, without the others' consent, "upon presentation and surrender" of the CD to the bank. Under Mississippi law, this language gave the bank a *right* to condition payment on presentment of the original certificate,[6] but it did not *obligate* the bank to require presentment.[7] That is, while it gave the bank the option to require presentment, it did not prohibit the bank from making payment to a named payee who was unable to produce the original certificate.

¶36.  Thus, even absent presentment and surrender, the bank could lawfully make payment to a named payee other than English, meaning that summary judgment was proper if there was no "genuine issue of material fact" or "conflicting evidence for trial" as to whether the bank had already made payment.[8] The bank came forward with evidence that it had. Specifically, the bank presented competent evidence that pursuant to its document retention policies, which comply with applicable law,[9] it would have a record of the CD if it had not

---

[6] *See Epperson v. SOUTHBank*, 93 So. 3d 10, 20 (¶31) (Miss. 2012).

[7] *See Ravenstein v. Cmty. Trust Bank*, 141 So. 3d 396, 402 (¶21) (Miss. Ct. App. 2013), *cert. granted*, 132 So. 3d 579 (Miss. 2014), *cert. dismissed*, No. 2012-CT-00659 (Miss. June 26, 2014) (en banc order).

[8] M.R.C.P. 56(c); *Laurel Yamaha Inc. v. Freeman*, 956 So. 2d 897, 906 (¶36) (Miss. 2007) ("[I]t is our duty to determine if there is conflicting evidence for trial." (quoting *Estate of Johnson v. Chatelain*, 943 So. 2d 684, 687 (¶8) (Miss. 2006))); *see also Glover ex rel. Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1274 (¶19) (Miss. 2007) ("If one is to faithfully apply the Rule's requirements to a particular case, the inescapable conclusion follows that the court *must* grant summary judgment unless . . . the record demonstrates at least the minimum quantum of evidence sufficient to justify a determination in favor of the non-moving party by a reasonable juror." (footnote omitted)).

[9] *See* Miss. Code Ann. § 81-5-7 (Rev. 2001); Miss. Admin. Code § 5-1:1.1.5.

been redeemed previously. The absence of such a record is therefore evidence that it had been redeemed. Once the bank came forward with this evidence, it was incumbent upon English to point to some contrary evidence sufficient to create a genuine issue of material fact that would require a trial. *See, e.g.*, *Commercial Bank v. Hearn*, 923 So. 2d 202, 210 (¶25) (Miss. 2006). The original certificate cannot provide such evidence because, as discussed just above, the bank had the legal option of redeeming the CD without presentment and surrender. The original certificate proves nothing other than that a right to payment once existed; it is *not* evidence that another payee has not exercised that right. Without evidence to support it, English's claim that a right of payment still exists amounts to nothing more than unsupported speculation in the face of actual evidence to the contrary. Such speculation is not sufficient to defeat summary judgment. *Adams v. Cinemark USA Inc.*, 831 So. 2d 1156, 1161 (¶19) (Miss. 2002); *Frazier v. McDonald's Restaurants of Miss. Inc.*, 102 So. 3d 341, 345 (¶23) (Miss. Ct. App. 2012). Nor is the majority's suggestion that the bank's evidence could be disbelieved a basis for denying summary judgment, for a plaintiff cannot avoid summary judgment merely by asserting that a fact-finder might disbelieve the evidence that the defendant has presented. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256-57 (1986).

¶37. The majority does not address *Epperson* or *Ravenstein* but instead reverses summary judgment based on the reasoning of a non-precedential *Erie* guess about New York law. *Katzman v. Citibank*, 298 F. App'x 81 (2d Cir. 2008) (summary order). However, whatever its value as a prediction of New York law, *Katzman* is not persuasive under Mississippi law.

18

This is because, as the majority emphasizes, *Katzman* reversed summary judgment based solely on language in the CD making presentment and surrender a condition of payment. *See id.* at 83-84. This is insufficient to create a triable issue of fact under Mississippi law because, as discussed above, *Ravenstein* holds that such language imposes no legal obligation on the bank. Thus, under Mississippi law, mere possession of an original certificate containing such language is not evidence that payment has not been made but only that a right to payment once existed. Because *Katzman*'s reasoning is inconsistent with *Ravenstein*'s holding, it is not persuasive.[10]

¶38. Finally, I note that Regions also moved for summary judgment based on laches and the statute of limitations, the chancery court appears to have granted summary judgment on both grounds, and both issues were briefed on appeal. These issues are not addressed in the majority opinion but are apparently resolved against Regions by implication.

¶39. I submit that the chancery court properly granted summary judgment because there is no conflicting evidence for trial. Because the majority concludes otherwise, I respectfully dissent.

**GRIFFIS, P.J., AND MAXWELL, J., JOIN THIS OPINION. ISHEE, J., JOINS THIS OPINION IN PART.**

---

[10] English herself recognizes in her reply brief that *Ravenstein* spells trouble for her case, arguing that the majority opinion in *Ravenstein* "is erroneous" and that we "should . . . adopt[]" the analysis of the *Ravenstein* dissent.

19