ISHEE, J.,
dissenting:
¶ 19, With respect to the majority, I must dissent. In its analysis, the majority grounds its opinion in Katzman v. Citibank, 298 Fed.Appx. 81, 2008 WL 4810481 (2d Cir.2008). While that case may be factually similar to the one at hand, it is permissive authority only since it stems from New York. Indeed, the majority fails to cite any mandatory authority in its analysis for its proposition that the evidence warrants a reversal.
¶ 20. By contrast, both this Court and the Mississippi Supreme Court have provided a framework of authority under which we are required to review this case — a fact acknowledged by both Elizabeth and Regions in them briefs on appeal. Elizabeth cited Epperson v. SOUTHBank, 93 So.3d 10 (Miss.2012), in support of her argument that the terms of the CD required that the original certificate, which she delivered to Regions in 2008, be presented for redemption — meaning that Regions should have redeemed the CD, and any hypothetical redemptions prior to the one attempted by Audie Belle in 2008 would have been improper since the original certificate would not have been presented. In Epperson, three CDs were purchased in the name of “Juanita Rick-man or Carolyn Epperson or Randy Thompson,” and one CD was purchased in the name of “Juanita Rickman [payable on death] to Carolyn Epperson and Randy Thompson.” Id. at 13 (¶ 5). The terms on the original certificates dictated that in order to withdraw the CD’s funds prior to maturity, all named CD holders must sign a signature card accompanying the original certificates, and the original certificates must be presented with the completed signature card. Id. Rickman kept all four original certificates in her possession. Id. at 15 (¶ 9).
¶ 21. Some time later, Epperson claimed Rickman produced a blank index card for Epperson to sign, which purportedly secured Epperson’s name on the CDs. Id. at 13 (¶ 5). Epperson eventually had a falling out with Rickman and Thompson. Id. at 14 (¶ 7). In a later visit to the bank, Epperson discovered that one of the CDs had been withdrawn prior to its maturity. Id. at (¶ 8). The record reflected that the blank index card signed by Epperson was actually a signature card that Rickman and Thompson had used to withdraw the CD’s funds prematurely. Id. Epperson immediately asked a bank official if she could withdraw her part of the remaining CDs, but was told'she had to present the original certificates in order to withdraw the money still in the CDs. Id. Approximately *989 four months later, Rickman and Thompson closed the remaining three CDs and consolidated them into one new CD to the exclusion of Epperson. Id. at 14-15 (¶ 9).
¶ 22. Epperson filed a complaint against the bank alleging that the bank breached its contract with her by failing to give her the funds from the CDs when she originally asked for them. Id. at 15 (¶ 10). The bank was granted summary judgment, and Epperson appealed. Id. at (¶ 12). The case was originally presented to this Court on appeal. Id. at (¶ 13). We reversed and rendered the circuit court’s judgment and found that the CDs’ terms did not require presentation of the original certificates. Id. We then awarded Epper-son the value of the CDs as of the date on which she attempt to redeem them from the bank, plus interest. Id.
1123. The supreme court later granted certiorari and reversed this Court’s judgment. Id. at 20 (¶ 31). The supreme court clarified that an analysis of a CD’s terms should be done under the framework of contractual law. Id. at 16 (¶ 15). However, the supreme court held that “[i]n a summary judgment case, the reviewing Court need not go through the entire three-step [contractual] analysis; the Court should determine only whether the contract is ambiguous.” Id. at 17 (¶ 20). “If the contract is unambiguous, the intention of the contracting parties should be gleaned solely from the wording of the contract and parole evidence should not be considered.” Id. (quotation omitted). If, however, the contract is found to be ambiguous, “the matter should ... [be] remanded to the trial court. Contractual ambiguities are questions to be determined by the trier of fact.” Id. at 18 (¶ 22) (citations omitted).
¶ 24. Regions countered Elizabeth’s argument with Ravenstein v. Community Trust Bank, 141 So.3d 396 (Miss.Ct.App.2013). The supreme court originally granted certiorari in Ravenstein on February 6, 2014, but dismissed the grant of certiorari four months later. In Ravenstein, Tammala (Tammy) and Ronald (Ronnie) Ravenstein were listed as joint owners of four CDs issued by Community Trust Bank, formerly known as Madison County Bank. Id. at 399 (¶ 1). The terms of each CD allowed for one party’s signature to transfer the ownership of the CDs without the knowledge or consent of the other party. Id. However, the terms of the CDs also required that the original certificates be presented in tandem with at least one party’s signature in order to withdraw or transfer ownership. Id. at 399-400 (¶ 5). Specifically, the CD stated: “You must present this certificate when you request a withdrawal or a transfer.” Id. Tammy maintained possession of the original certificates. Id. at 400 (¶ 6).
¶25. Sometime after issuance of the CDs, Ronnie signed a request asking that the bank transfer all four CDs into his sole ownership. Id. However, he did not present the original certificates to the bank when he made his request. Id. Despite Ronnie’s failure to present the original certificates, the bank granted the transfer of ownership, and Ronnie pledged all four CDs as collateral for a loan on which he eventually defaulted. Id. at (¶¶ 6-7). The bank then applied the CDs’ entire values to the balance of the loan. Id. at (¶ 7).
¶26. Tammy sued the bank, claiming the bank breached its contract with her under the terms of the CDs by failing to require that Ronnie present the original certificates at the time he requested a transfer of ownership. Id. at 399 (¶ 2). After summary judgment was granted to the bank, Tammy appealed. Id. at 400 (¶ 8).
¶ 27. On appeal, we held that the requirement that the original certificates be *990 presented to the bank in order to withdraw or transfer the CDs “imposes an obligation on the depositors to present the certificates. It does not impose an obligation on the [b]ank to require the certificates be presented.” Id. at 402 (¶ 20). We further stated:
The obligation to present the certificates to the- [b]ank was for the [blank’s protection, as part of its right to restrict early withdrawals. This provision gave the [b]ank the right to refuse to consent to.Ronnie’s request for transfer because he did not present the certificates. But it did not obligate the [b]ank to- require presentment_ Thus, by not requiring presentment, the [b]ank was waiving a contractual protection, not breaching a contractual obligation... .■ Tammy concedes that only one signature was required and-Ronnie was authorized to give his signature. Assured that Ronnie was authorized to make the transfers without Tammy’s agreement, the [b]ank could waive the presentment requirement and consent to the transfers without breaching any contractual obligation to Tammy.
Id. at 402-03 (¶¶ 20-22).
¶ 28. Accordingly, Regions asserts that the terms of-the CD were unambiguous, and that it was never under a contractual obligation to require presentment of the CD in order to effect redemption. Hence, Regions claims there was no breach of contract. Furthermore, Regions notes that the lack of bank records for the CD proves the CD must have been redeemed previously, even though Audie Belle held the original certificate.
¶ 29. I agree. The terms of the CD reference “prior redemption,” or early withdrawal, and state that the CD would be redeemable “upon presentation of this Certificate properly endorsed at said bank, subject to prior redemption provisions detailed on reverse side hereof.” The redemption provisions on the reverse side of the CD state:
The depositor may not withdraw all or any part of his time deposit prior to maturity except with the consent of the bank which may be given only at the time such a request for withdrawal is made, and that if the bank gives its consent at that time, a penalty will be assessed on the amount withdrawn.
This language is very similar to the CD terms seen in Ravenstein. In accordance with our holding.in Ravenstein, Regions was under no obligation to require presentment of the CD since that requirement was a protection .to, Regions, not the CD holder.
¶ 30. Moreover, as we opined in Raven-stein, the avenue for protection of a joint owner of a CD is not merely to possess the CD, but to require each owner’s signature for any withdrawal or transfer. Id. at 402 (¶ 22). Any of the other CD holders could have previously redeemed the CD in question without Audie Belle’s consent or the original certificate, according to Ravenstein. Alternatively, one of the other. CD holders could have employed Regions’s lost-CD policy and had an original certificate re-issued.
¶ 31. Elizabeth asserts that Regions’s lack of records regarding the CD should invoke a requirement that the bank redeem the- CD since Regions has no direct documentation that the CD has been redeemed. I disagree. The record reflects that when interest is paid on an account, banks are required to submit a Form 1099 to the ’ IRS showing the details of- the payment. The bank must also retain a copy of the Form 1099 for the account’s records. Moreover, if an account is still active or payable by a bank, the bank is required to maintain all records on the account. According to Mississippi Code *991 Annotated section 81-5-7 (Supp.2014) and regulations imposed by the Mississippi Commissioner of Banking and Consumer Finance, - banks must maintain bank records for closed accounts for a minimum period of three years from the date-of the account’s most recent financial transaction. After the three-year period has expired, all records related to closed accounts may be destroyed — including Form 1099 documents. Regions maintained closed-account records for three years longer than the required minimum. Records relating to open accounts must be maintained indefinitely.
¶ 32. There is no evidence in the record to suggest that Regions destroyed records relating to the CD prior to the allowable time for their destruction under State law and banking regulations. The fact that records relating to the CD are not present in Regions’s records for open accounts does not necessarily reflect an error on the part of Regions, nor does it require Regions to redeem the CD. Cqnversely, the comment to Mississippi Rule of Evidence 803(7) says: “A record’s failure to mention a matter which would ordinarily be contained in it is admissible to prove the nonexistence of the matter.” Hence, the lack of records relating to the CD provides a strong inference that the account had been closed for more than six years prior to the attempted redemption in 2008. Additionally, Elizabeth only produced two tax records, despite Regions’s < request for Form 1099 and federal income tax documents from 1991 through 2008, and neither record proves that the CD was in existence at any time after 1991.
¶ 33. While the majority’s conclusion is supported by convincing authority, it is permissive authority gleaned from outside of our body of law, and should not be relied upon absent existing mandatory authority. Epperson and Ravenstein remain valid, mandatory authority in this state. Having analyzed this case pursuant to Ep-person and Ravenstein, it is clear to me that I must dissent from the majority and agree with the chancery court’s decision.
GRIFFIS, P.J., MAXWELL AND WILSON, JJ., JOIN THIS OPINION.