BARNES, J.,
FOR THE COURT:
¶ 1. Hunter Rasdon brought an action for breach of contract and breach of the covenant of good faith and fair dealing against Charles Thrash, individually and/or on behalf of the Mississippi State Championship Challenge Series (MSCCS). Rasdon had been fined $500 and disqualified as the winner of a racing event because tire samples taken from his vehicle were tested and found to be nonconforming under the MSCCS’s “Rules and Specifications.” After the County Court of Lauderdale County granted summary judgment in favor of Thrash, Rasdon appealed the decision to the Lauderdale County Circuit Court. The circuit judge affirmed the ruling.
¶ 2. Finding no error on appeal, we affirm the judgment.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 3. On March 28, 2015, Rasdon accepted an open invitation to participate in a MSCCS racing event promoted by Thrash. The event was held at Whynot Motor-sports Park in Meridian, Mississippi. It was advertised that the winner of the event would receive $2,000 and championship points. As a condition of entry into the event, race participants were required to adhere to MSCCS’s “Rules and Specifications.” The “Rules and Specifications” provided in part:
(4) Chemical alteration of any tires is prohibited. No tire softeners or conditioners which alter the chemical compound of the tire will be permitted. This includes, but is not limited to, tire soaking, internal applications or the use of tread softeners.
[[Image here]]
(10) The MSCCS will take tire samples from the Fast Qualifier car and the winning car and [the samples] will be sent to a certified lab for testing. Tires not conforming to the manufacturer’s benchnwk will be deemed illegal. Any competitor is subject to tire inspections and/or samples being taken at any time during the event.
(11) Competitor with tires being tested will not be awarded any winnings until results are back from the lab. (Results are normally back within 3-5 business days.).
(12) Penalties for non-conforming tires:
(13) First Offense: $500 fine for driver and forfeit of points and winnings from the event the non-conforming tire participated in.
(14) Second Offense: $1,000 fine for the driver and forfeit of points and winnings from the event the non-conforming tire participated in and/or a two (2) race suspension from MSCCS events.
[[Image here]]
(16) Any competitor found with non-conforming tires will not be allowed to *559 participate in any MSCCS event(s) until any and all fines are paid.
¶ 4. As Rasdon was both the “Fast Qualifier” and winner of the race, Thrash collected samples of Rasdon’s tires and sent them to Blue Ridge Laboratories for inspection to make sure the tires were not chemically altered (“tire doping”).[1] After Blue Ridge determined that one of the tire samples was nonconforming when compared to the tire manufacturer’s benchmark,[2] Thrash informed Rasdon that his tires tested positive for an undisclosed chemical alteration. Per the rules, Rasdon was disqualified as the winner of the race, fined $500, and precluded from participating in future MSCCS events until the fine was paid.
¶ 5. Rasdon filed a complaint with the county court on May 15, 2015, seeking compensatory damages and permanent in-junctive relief for breach of contract and breach of the implied covenant of good faith and fair dealing. Thrash filed a motion for summary judgment, which included a motion for the “recovery of attorney’s fees and other reasonable expenses.” The county court granted Thrash’s motion for summary judgment and dismissed the case with prejudice, concluding “that no MSCCS official breached any contractual obligations owed to the Plaintiff[,] including implied obligations of good faith and fair dealings averred by the Plaintiff[.]” It denied Thrash’s request for attorney’s fees and expenses. Rasdon filed a motion for reconsideration, which was denied.
¶ 6. Rasdon appealed the decision to the circuit court, arguing that it was “improper for the county court to rule summarily that [Thrash] did not breach the implied covenant of good faith and fair dealing.”[3] On September 2, 2016, the circuit court affirmed the county court’s grant of summary judgment and upheld the denial of Thrash’s motion for attorney’s fees and expenses, concluding that the action was not frivolous. Rasdon now appeals to this Court.
STANDARD OF REVIEW
¶ 7. The grant or denial of a motion for summary judgment by a trial court is reviewed de novo. Martindale v. Hortman Harlow Bassi Robinson & McDaniel PLLC, 119 So.3d 338, 341 (¶ 6) (Miss. Ct. App. 2012) (citing Lewallen v. Slawson, 822 So.2d 236, 237 (¶ 6) (Miss. 2002)). Summary judgment is proper “if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). “In determining the propriety of summary judgment, we view the facts in the light most favorable to the nonmovant.” Martindale, 119 So.3d at 341 (¶ 6) (citing Robinson v. Singing River Hosp. Sys., 732 So.2d 204, 207 (¶ 12) (Miss. 1999)).
*560 DISCUSSION
¶ 8. Affirming the county court’s judgment, the circuit court determined that Rasdon “freely entered into the con-tráete,] which contains clear and unambiguous terms and conditionsf,]” and “made no showing of any violation by [Thrash] of standards of decency, fairness, or reasonableness.” Relying on the Mississippi Supreme Court’s holding in Cenac v. Murry, 609 So.2d 1257, 1272 (Miss. 1992), Rasdon claims that Thrash had “an obligation ‘to take affirmative steps’ to ensure that the ‘goals’ of tire testing”—“uniformity among the drivers” and a “safe and level playing field”—were accomplished. (Emphasis added).
[C]ourts have often supplied a term ret quiring both parties to a contract to exercise what is called “good faith” or sometimes “good faith and fair dealing.” This duty is based on fundamental notions of fairness, and its scope necessarily varies according to the nature of the agreement. Some conduct, such as subterfuge and evasion, clearly violates the duty. However, the duty may not only proscribe undesirable conduct, but may require affirmative action as well, A party may thus be under a duty not only to refrain from hindering or preventing the occurrence of conditions of his own duty or the performance of the other party’s duty, but also to take some affirmative steps to cooperate in achieving these goals.
Id. (emphasis added) (quoting E, Allan Farnsworth, Contracts § 7.17, at 526-27 (1982)).' Rasdon argues that the “mere compliance with the express terms of an agreement without a sensible attempt to carry out the fundamental purpose of those terms calls into question one’s commitment to execute the agreement in good faith.” Thus, he urges this Court to look outside the “four corners" of the contract and “contemplate the underlying purpose of the tire testingf.]”
¶ 9. In Ravenstein v. Community Trust Bank, 141 So.3d 396, 403-04 (¶27) (Miss. Ct. App. 2013), we held:
“All contracts contain an implied covenant of good faith and fair dealing in performance and enforcement.” Limbert v. Miss. Univ. for Women Alumnae Ass’n, 998 So.2d 993, 998 (¶ 11) (Miss. 2008). Good faith means “the faithfulness bf an agreed purpose between two parties, a purpose' which is consistent with justified expectations of the other party.” Cenac, [609 So.2d at 1272.] In contrast, bad faith requires “a showing of moré than bad judgment or negligence; rather, ‘bad faith’ implies some conscious wrongdoing ‘because of dishonest purpose or moral obliquity.’” Univ. of S. Miss. v. Williams, 891 So.2d 160, 170-71 (¶ 24) (Miss. 2004). However, a party does not breach the “implied covenant of good faith and fair dealing when the party took only those actions which were duly authorized by the contract.” Limbert, 998 So.2d at 999 (¶ 14).
(Citations omitted). Thrash maintains that he acted “consistent with the MSCCS Rules and Specifications which Rasdon was aware of and agreed to prior to entering the race.” We agree. The terms outlined in the MSCCS “Rules and Specifications” were unambiguous. As Rasdon was the fastest qualifier and the winner of the race, Thrash was authorized to take the tire samples from Rasdon’s car and submit those samples for testing. The rules also explicitly provided that a finding of a nonconforming sample would disqualify Ras-don and require him to pay a $500 fine. Rasdon testified that he had read the rules previously and that the tire testing “was announced during the drivers’ meeting before the races.” Rasdon also acknowledged *561 that there was no evidence of bad faith in this instance.
Q. Okay. Are you alleging any motives behind [Thrash’s] actions? Like he had a dishonest purpose or anything?
A. I’m not claiming he’s a dishonest man if that’s what you’re asking.
Q. I’m really just asking if you were—if there was an allegation of some sort of motive? Like he had [a] dishonest purpose behind this whole thing?
A. No.
The “underlying purpose” of the MSCCS tire rules is to ensure that no driver has an unfair advantage, or as Rasdon acknowledges, that there is a “safe and level playing field.” Thrash’s actions under the rules satisfy this purpose.
¶ 10. Rasdon also disputes the accuracy of the test results, and claims it was “violative of the fundamental notions of fairness and reasonableness” for Thrash to rely on them.[4] However, as the county court noted, there was no provision in the rules “for contesting lab results ... [, as] neither MSCCS nor Whynot Motorsports Park, LLC ha[d] any control over the independent testing lab[.]” Rasdon asserted no claim against Blue Ridge as a defendant; nor did he depose the company regarding the results. He also acknowledged in his deposition that he had no expectation of protest procedures. While Rasdon’s independent test indicated his tire samples “did not contain any atypical entities at a level that would flag the tire as being chemically altered,” those results were admittedly not compared to the manufacturer’s benchmark standard adopted in the “Rules and Specifications.”
¶ 11. Accordingly, we affirm the grant of Thrash’s motion for summary judgment. As a final consideration, Thrash requests this Court to address his claim that he was entitled to attorney’s fees and expenses. However, since Thrash did not file the required notice of cross-appeal under Mississippi Rule of Appellate Procedure 4, this issue is not properly before this Court and may not be considered. See M.R.A.P. 4(c).
¶ 12. AFFIRMED.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.

. Certain chemicals can provide drivers better traction on dirt, giving them a competitive advantage.

. A duplicate test was done on the same tire yielding the same results. Although Rasdon had an independent test conducted through another laboratory, which revealed that the tire samples he submitted "did not contain any atypical entities at a level that would flag the tire as being chemically altered,” the report also noted that the "manufacturer benchmark sample was not available for comparative analysis.” The county court later determined that the independent test result had "little or no probative value,” as the testing "was out from under the supervision of MSCCS officials and/or Whynot track officials.”

.Rasdon conceded his claim for breach of contract.

. Rasdon is referring to the fact that the Blue Ridge report was dated April 3, 2015, but the last page of the report shows that a sample was scanned on April 9, 2015, four days after he was disqualified. Regardless, as Thrash notes, the report still indicates that the samples tested on April 2, 2015, did not conform with the benchmark.