# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-00978-SCT

*T. MARK SLEDGE*

*v.*

*GRENFELL SLEDGE AND STEVENS, PLLC d/b/a*
*GRENFELL & STEVENS, PLLC, JAMES B.*
*GRENFELL AND JOHN HUNTER STEVENS,*
*INDIVIDUALLY*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/19/2017 |
| TRIAL JUDGE: | HON. M. RONALD DOLEAC |
| TRIAL COURT ATTORNEYS: | WILLIAM C. WALTER |
| | STEVEN HISER FUNDERBURG |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | T. JACKSON LYONS |
| | MARC E. BRAND |
| ATTORNEY FOR APPELLEES: | STEVEN H. FUNDERBURG |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 12/13/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., COLEMAN AND MAXWELL, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1. Upon the withdrawal of T. Mark Sledge from the law firm Grenfell Sledge and Stevens, PLLC, an issue arose regarding the fee distribution for several of the firm's and Sledge's cases, more specifically, the interpretation of the firm's partnership agreements and related documents. Sledge filed suit against his former firm and its individual members. Following a hearing, the Hinds County Chancery Court granted the motion for summary judgment filed by Grenfell Sledge and Stevens, PLLC, and its individual members and also

a declaratory judgment in their favor. Sledge challenges the chancery court's rulings; however, we are unpersuaded by his arguments on appeal and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.	On April 3, 2014, James Grenfell, T. Mark Sledge, and John H. Stevens executed a "Supplement to Partnership Agreement For Grenfell, Sledge & Stevens"[1] (Supplement Agreement) to address the division of fees in general and, more specifically, the division of fees and firm property in the event of death, disability, retirement, withdrawal of firm members, and/or dissolution of the firm. The Supplement Agreement became effective on January 1, 2014, although it was not executed until April 3, 2014.

¶3.	According to the Supplement Agreement's section providing for the division of fees, Grenfell Sledge and Stevens, PLLC, agreed that,

> Beginning January 1, 2014, cases signed up after that date, not related to joint firm advertisement, the said partner that obtained case or fee generated therefrom will be entitled to fifty percent . . . of the fee as compensation from the case, from the total fee to the firm, with the remaining fifty percent . . . to be divided per the prior partnership agreement [or one-third] each after the payment of overhead and expenses. We recognize that on these individual cases the partner who has the case is responsible for fifty percent . . . of the case specific expenses until settlement. The remaining fifty percent . . . expenses will be paid from the general partnership fund. . . . The Agreement set forth above will take place in the year 2014 and in the year 2015 the partner obtaining the case or generating the fee will be entitled to sixty percent . . . of the fee and be responsible for sixty percent . . . of the expenses on each case under the same terms as set forth above. In 2016, the generating partner's percentage will increase to seventy percent . . . of the fees and expenses as set forth above. In 2017, the generating partner's percentage will increase to eighty percent . . . as set forth above. In 2018, the generating partner's percentage will increase to ninety percent . . . as set forth above. In 2019 and

---

[1]Although titled as a supplement, the document indicated that any prior agreement was either oral or lost.

in subsequent years, the generating partner will be entitled to one hundred percent . . . of the fees they generated and will be responsible for one hundred percent . . . of the expenses on each case.

Additionally, each member was required to pay one-third of the expenses for operation of the common office-operation expenses.

¶4.    The Supplement Agreement also contained a provision for how fees would be handled in the event of the death, disability, retirement, or withdrawal of a member. According to the provision,

> Should a member of this partnership retire, withdraw, die or become permanently unable to practice law, fees from cases that he leaves with the firm will be handled by the remaining partner(s) and he or his estate or representative will receive one-half . . . of any fees from cases resolved in the first six . . . months following his departure or one-third . . . of the fees generated from cases remaining with the firm thereafter. Said . . . withdrawn . . . partner will receive compensation only on his cases or on cases obtained through advertising and referred to other law firms as addressed below. . . .
>
> Cases that were advertised for and referred to other attorneys . . . will continue to be divided one-third . . . , one-third . . . , one-third . . . , whenever resolved, unless the referred case results in substantial work for the remaining partner(s). . . . Where advertisement is ongoing at the time of . . . withdrawal, the departing partner will be entitled to fees from, and only from, cases that are signed up prior to his . . . withdrawal.
>
> Fees from cases obtain[ed] through joint firm advertisement . . . will continue to be divided equally between the partners. . . .

Last, but also important, the Supplement Agreement stated, "Any dispute or decision related to this agreement or partnership shall be settled by a majority vote of the partners."

¶5.    Then, on April 30, 2014, Grenfell, Sledge, and Stevens amended the Supplement Agreement because it "did not address each partner[']s case inventory of individual existing cases in the office before January 2014[.]" The Amended Supplement Agreement explained,

3

"From this day forward each partner will receive [fifty] percent of the fees brought into the firm of any case considered an individual case that was signed up before [January] 2014. The remaining [fifty] percent will be divided [twenty-five] percent to each of the other [two] partners."

¶6.  The group operated as such until Sledge provided notice to the others that he was withdrawing from the firm effective August 4, 2015.  According to Sledge, he was "forced" to withdraw from the firm "[d]ue to the intentional actions of members Grenfell and Stevens, including harassment, false accusations, breach of good faith and fair dealings and threats of litigation directed toward Sledge[.]"

¶7.  Following an unsuccessful mediation attempt on August 21, 2015, Grenfell and Stevens, as the remaining members of the firm, executed a "Joint Resolution of Grenfell, Sledge & Stevens, PLLC" (Joint Resolution), addressing Sledge's withdrawal from the firm. According to the Joint Resolution, "Sledge has . . . taken the position that he had withdrawn from the Firm, that he is taking all of his caseload with him and that the Firm is not entitled to fees from these cases, regardless of firm resources used on said cases."  However, "[t]he Firm's position is that it was never the intent of the parties to allow a partner to withdraw from the Firm and take all of his cases with him, without owing fees to the Firm, and that the Supplement Agreement is clear."  The Joint Resolution referred back to the Supplement Agreement's language that any dispute related to the Supplement Agreement is to be settled by a majority vote of the members.  Then, the Joint Resolution contained the following language:

4

[T]he majority of the partners/members hereby resolve the dispute as follows:

As discussed and promoted by all three . . . members in mediation, we will agree to allow Mark Sledge to retain 100% of any fees on all cases in his caseload as of August 4, 2015, subject to reimbursement of any expenses incurred by the Firm before August 4, 2015, to the Firm and excepting specific cases as follows: 1. the O'Quinn case, 2) the Firm BP case and 3) the Burkes Case . . . .

As a compromise and what the majority partners believe to be a reasonable resolution to the dispute each individual attorney will keep any fees generated from his caseload after August 4, 2015, and any fees from the three . . . disputed cases (O'Quinn, Firm BP and Burkes) will be divided equally (with James Grenfell, Mark Sledge and John Stevens each receiving 1/3) upon resolution.

Lastly, the Joint Resolution provided,

The majority of the members acknowledge and agree that the offered compromise is made in an attempt to resolve this matter . . . . However, if the terms of this proposal are not accepted, then the Firm and Grenfell and Stevens, individually, will rely on the terms of the Partnership Agreement as written and as voted on by the majority of the partners, and enforce this Agreement and Resolution as necessary.

Sledge did not agree with or sign the Joint Resolution.

¶8.     Sledge sued the firm and its remaining members, Grenfell and Stevens. In his complaint, Sledge sought a declaratory judgment "to declare the rights, duties, obligations and legal status of the party under the [firm's operating] agreements . . . and to declare Sledge's entitlement to the assets retained by the [firm] which were legally owed to him."[2]

Moreover, Sledge requested an accounting of fees from the cases existing at the time of his

---

[2] After the firm and Grenfell filed a motion to dismiss pursuant to Mississippi Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted, the trial court dismissed Sledge's first complaint, allowing him leave to amend his complaint. Sledge filed an amended complaint.

withdrawal from the firm, an accounting of all the trust funds held by the firm at the time of his withdrawal, an accounting of all expenses incurred on cases existing at the time of his withdrawal, and an accounting "for all sums due pursuant to the partnership [a]greement . . . that are being unlawfully held by the Defendants." Sledge also requested equitable and injunctive relief, more specifically, "a money [j]udgment for draws not paid and Sledge's share of the proceeds from the aforesaid cases settled before August 4, 2015 but paid after said date." Sledge requested that the trial court "order and enjoin" the firm to list office property at a "reasonable selling price" as opposed to the 12.5 percent above appraisal that was the current list price at that time. Last, Sledge claimed that the "Defendants have . . . breached the terms of the [firm's] agreements by withholding moneys belonging to Sledge[, entitling him] to a judgment for such fees due him under the [firm a]greements."

¶9.     Both parties presented motions for summary judgment to the trial court, and both parties agreed that the case was ripe for resolution through a declaratory judgment. The trial court found in favor of the firm and granted the firm's motion for summary judgment as to Sledge's request for an accounting, for equitable and injunctive relief, and for breach of contract. According to the trial court's declaratory judgment, the parties incorporated a dispute-resolution provision into the Supplement Agreement by using the language that said any dispute or decision related to the agreement or partnership "shall be settled by a majority vote of the partners." Therefore, the trial court rejected Sledge's position that the Joint Resolution was a settlement offer and concluded that Sledge was bound by the Joint Resolution that was executed by Grenfell and Stevens consistent with the dispute-resolution

6

provision outlined in the Supplement Agreement. The trial court found "that the joint resolution allow[ed Sledge] to retain [one hundred percent] of fees on cases contained in plaintiff's individual caseload as of August 4, 2015, subject to reimbursement of any expenses incurred by [the firm] incurred before August 4, 2015 and excepting the specific cases of (1) *O'Quinn*; (2) the BP claim of Grenfell, Sledge and Stevens, PLLC; and (3) *Burkes*[.]" Further, "any fees from the three cases identified and discussed in the joint resolution . . . will be divided equally between James Grenfell, Mark Sledge and John Stevens." Any fees from cases that were advertised for prior to Sledge's withdrawal would also be divided equally among the men, because such an arrangement "is fair, equitable and required by the contract and the [Joint Resolution.]"

¶10. Sledge filed a motion for reconsideration or, in the alternative, clarification. The trial court was unpersuaded by Sledge's arguments and entered its order and final judgment on June 19, 2017, reaffirming its previous findings and holdings. Additionally, because the firm had an outstanding counterclaim that was not decided, the trial court entered a final judgment pursuant to Mississippi Rule of Civil Procedure 54(b), primarily based on the firm's position that its counterclaim should be stayed pending appeal because, according to the firm, the counterclaim had been filed "out of an abundance of caution and to protect [the firm's] rights should dispositive motions be denied and this ligation continue."

¶11. Sledge did perfect his appeal. On appeal, Sledge raises the following issues:

    I.    Did the chancellor err as a matter of law in dismissing Sledge's original complaint for an accounting of the various cases, expenses, and income generated by the three members of the firm in accord with its operating agreement?

II. Did the chancellor err as a matter of law by failing to apply basic contract law to the express terms of the parties' operating agreement governing their limited liability company?

III. Having rendered judgment denying Sledge's claims, did the chancellor err as a matter of law in failing to apply the express terms of Mississippi's Limited Liability Company Act to the operating agreement?

## STANDARD OF REVIEW

¶12. The Court reviews a trial court's decision to grant or deny summary judgment using the de novo standard. *In re Guardianship of Duckett*, 991 So. 2d 1165, 1173 (¶ 15) (Miss. 2008). Similarly, "while the decision to grant [declaratory judgment] relief is discretionary, the judgment's conclusions of law are reviewed de novo on appeal." *Tellus Operating Grp., LLC v. Texas Petroleum Inv. Co.*, 105 So. 3d 274, 282-83 (¶ 31) (Miss. 2012).

## ANALYSIS

### I. Original Complaint

¶13. After Sledge filed his original complaint, the firm filed a motion to dismiss pursuant to Mississippi Rule of Civil Procedure 12(b)(6) for failure to state a claim. The trial court granted the firm's motion and dismissed Sledge's complaint without prejudice. Further, the trial court, pursuant to "Rule 12(b)(6) and [Mississippi Rule of Civil Procedure] 15(a), [found] that 'justice so requires' that leave to amend shall be, and is hereby granted to Plaintiff to file an *Amended Complaint* within thirty days from the date of entry of this *Order*." (Emphasis in original.) Sledge did file an amended complaint, which the parties litigated and is now the subject of the present appeal. However, in his first issue on appeal, Sledge argues that the trial court erred in dismissing his *original* complaint that had

8

contained a request for an accounting when all of the elements to grant the requested accounting had been present. Sledge specifically notes in his reply brief that his issue is with the dismissal of the *original* complaint. "[N]one of what Grenfell says has anything to do with whether the original complaint was correctly dismissed. . . . Sledge believes the original complaint should be reinstated by reversing the chancellor's order."

¶14. The instant issue has not been squarely presented to the Court in the past; however, we hold that the trial court's dismissal of Sledge's original complaint is not subject to review on appeal. First, Sledge filed an amended complaint that contained an identical request for an accounting and proceeded to litigate fully the amended complaint. He never attempted to file a Mississippi Rule of Civil Procedure 60(b) motion, an interlocutory appeal, or a direct appeal from the dismissal.[3] Once the trial court entered the order dismissing the complaint with leave to amend, Sledge simply acquiesced and filed an amended complaint.

¶15. More importantly, in *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam), the United States Court of Appeals for the Fifth Circuit explained that "[a]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." Further, Wright and Miller supports the Fifth Circuit's position: "[a] pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified. Once an amended pleading is

---

[3] Sledge did file a Memorandum of Law in Opposition to Defendant's Motion to Dismiss, and in the Memorandum, he specifically argued that a complaint for an accounting is a cause of action in itself.

9

interposed, the original pleading no longer performs any function in the case . . . ." 6 Charles

Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1476 (3d ed. 2018). Thus,

Sledge's filing of the amended complaint, which contains no adoption or incorporation of

the original complaint, superseded his original complaint and rendered his original complaint

of no effect.

¶16. Since Sledge filed an amended complaint and since his original complaint was

superseded by his amended complaint, the issue is moot because nothing exists for the Court

to reinstate should the trial court have erroneously dismissed the complaint. "Cases in which

an actual controversy existed at trial but the controversy has expired at the time of review,

become moot." *Fails v. Jefferson Davis Cty. Pub. Sch. Bd.*, 95 So. 3d 1223, 1225 (¶ 13)

(Miss. 2012).

## II. The Firm's Agreements

¶17. As one of the attorneys stated at the hearing, "It is rare that parties that have a contract

dispute agree that it is a valid and enforceable, unambiguous document. . . . It is a little

unusual that you have got lawyers on both sides reading the same language and coming up

to polar opposites of the effect of it." The dispute-resolution provision is one sentence: "Any

dispute or decision related to this agreement or partnership shall be settled by a majority vote

of the partners." Sledge argues that the dispute-resolution provision is inapplicable because

he was no longer a partner or member of the firm, so he is not subject to any decision made

following his withdrawal, such as the Joint Resolution. Quite opposite is the firm's position

that Sledge remains subject to the dispute-resolution provision, because the dispute is related

10

to the Supplement Agreement's withdrawal-of a-member provision. For the reasons below, we agree with the trial court's adherence to the firm's position.

¶18.   First, Sledge argues that the trial court erred by failing to apply contract law and the Revised Mississippi Limited Liability Company Act.[4] Primarily, Sledge takes issue with the trial court's reliance on the dispute-resolution provision of the Supplement Agreement as the basis for the finding that the Joint Resolution applied to Sledge after his withdrawal.

¶19.   As part of the Revised Mississippi Limited Liability Company Act, Mississippi Code Section 79-29-303 (Rev. 2011) provides,

> A member may withdraw from a limited liability company . . . upon the written consent of all the members. . . .   Except as otherwise provided by the . . . written operating agreement, a member who has withdrawn from or been expelled from a limited liability company ceases to be a member of the limited liability company and ceases to have any governance rights.

Additionally, in Mississippi Code Section 79-29-105(bb) (Rev. 2011), the Legislature defined "withdraw" or "withdrawal" as "any voluntary act by which, pursuant to the . . . written operating agreement, a member ceases to be a member of the limited liability company and ceases to have any governance rights." The Legislature defined "governance rights" as

> all of a member's rights as a member in the limited liability company other than financial rights . . . including without limitation: (i) the rights to participate in the management of the limited liability company; . . . (iii) the right to vote for or consent to matters requiring the vote of or consent of the

---

[4] Not until after the trial court had ruled and the case was before the trial court on reconsideration did Sledge argue that any of the provisions of the Mississippi Limited Liability Company Act applied. The firm objected. Whether the trial court sustained or overruled the firm's objections to the new arguments is unclear, although it is clear that the new arguments were considered by the trial court.

members, as specified in this chapter or in the certificate of formation or operating agreement[.]

Miss. Code Ann. § 79-29-105(k) (Rev. 2011).

¶20. Sledge's argument is that upon his withdrawal from the firm, he was "legally incapable of participating in any decisions relating to the Firm" at the time the Joint Resolution was signed; likewise, he was not bound by any decision made by the firm after his withdrawal due to his lack of governance rights pursuant to the above statutes. According to Sledge, the dispute-resolution provision, which states that "[a]ny dispute or decision related to this agreement or partnership shall be settled by a majority vote of the partners" unambiguously "contemplates that at the time an issue is resolved or a decision made, only members of the Firm[, of which a withdrawn member is not,] vote."

¶21. On the other hand, the firm argues that the trial court's decision was correct because, under contract law and the Revised Mississippi Limited Liability Company Act, the Supplement Agreement's dispute-resolution provision still applies to the instant case. First, the firm cites the portions of the Revised Mississippi Limited Liability Company Act allowing companies to provide exceptions to the statues through the operating agreements. As quoted above, Section 79-29-303 provides, "Except as otherwise provided by the . . . written operating agreement, a member who has withdrawn from or been expelled from a limited liability company ceases to be a member of the limited liability company and ceases to have any governance rights." The firm contends that the dispute-resolution provision in the Supplement Agreement is one such exception.

12

¶22. In regard to the Revised Mississippi Liability Company Act arguments, we are persuaded by the firm's argument and the reasoning of the trial court. During the hearing on Sledge's motion for reconsideration or clarification, the trial court explained that it believed Section 79-29-303 was "somewhat subsumed" by the dispute-resolution provision,

> which the [trial c]ourt has previously ruled to be binding and enforceable and specifically with regard to the fact that the fee division remains in dispute. The [trial c]ourt reads the statute [(Section 79-29-303)] to hold that the parties can make exceptions either in the certificate of formation or in their operating agreement, and the [trial c]ourt has previously found that this, essentially, is what has occurred. . . .

Although Sledge's withdrawal from the firm did sever his governance rights pursuant to Section 79-29-303, Sledge continued to have governance rights as outlined in and permitted by the dispute-resolution provision, which include his participation in a majority vote on "any dispute or decision related to this agreement." The instant scenario falls squarely within Section 79-29-303 as an exception, and the dispute-resolution provision is enforceable against Sledge. Because Sledge is subject to the dispute-resolution provision, the resulting Joint Resolution is also binding.

¶23. Sledge's argument under contract law is similar. He argues that the dispute-resolution provision does not apply to disputes between members and non-members, which he was upon his withdrawal. He relies on cases involving the application and enforcement of an arbitration provision in a contract for a two-step analysis used "in reviewing claims relating to contractual dispute resolution devices." The first step is "whether there is a valid arbitration agreement[]" or as Sledge reframes it, "does an alternative dispute resolution provision exist in the agreement[?]" *Sanderson Farms, Inc. v. Gatlin*, 848 So. 2d 828, 834

13

(¶ 15) (Miss. 2003). The second is "whether the parties' dispute is within the scope of the arbitration agreement[,]" or as reframed by Sledge, "are there contract law principles external to the language of the dispute provision that would vitiate the agreement[?]" *Id.* Sledge maintains that the first step is met because the Supplement Agreement contains a dispute-resolution provision and the dispute in the instant case falls within the parameters of the provision, in part. Sledge argues that the dispute-resolution provision may apply to the dispute, but that the dispute-resolution provision still does not apply in the instant case because the provision "expressly does not apply to anyone who is not a member. Only disputes within the membership of the LLC are governed by the Operating Agreement." Sledge further argues that as a non-member, he could not be bound by the dispute-resolution provision, so the resulting Joint Resolution was merely an "offer in compromise" that he refused.

¶24. As the Court has explained, "we must determine whether the contract is ambiguous, and if it is not, then it must be enforced as written. In making that determination, the Court must review the express wording of the contract as a whole." *Epperson v. SOUTHBank*, 93 So. 3d 10, 16 (¶ 17) (Miss. 2012) (internal citations omitted). In the instant case, the parties both submit that the contract is unambiguous, but they disagree about a particular provision. "The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." *Id.* at 16-17 (¶18) (quoting *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 404 (Miss. 1997)). "If the contract is unambiguous, 'the intention of the contracting parties should be gleaned solely

14

from the wording of the contract' and parole evidence should not be considered." *Id.* at 16 (¶ 17) (quoting *Turner v. Terry*, 799 So. 2d 25, 32 (¶ 16) (Miss. 2001)).

¶25.   Sledge claims that the dispute-resolution provision does not apply to a non-member; however, the Supplement Agreement, which contains the dispute-resolution provision, specifically and almost solely addresses the withdrawal of a member and the division of fees and property upon withdrawal.  It does not follow that the parties would use the language "[a]ny dispute or decision *related to this agreement* or partnership" were the dispute-resolution provision not to apply to a withdrawn member whose withdrawal is covered in the Supplement Agreement.  Thus, based on the wording of the contract, the parties intended for the dispute-resolution provision to be applicable in a case precisely like the instant one.

## CONCLUSION

¶26.   We affirm the trial court's judgments in favor of Grenfell Sledge and Stevens, PLLC, and the individual defendants.  Sledge's argument that he was not bound by the Supplement Agreement's dispute-resolution provision is not supported by the Revised Mississippi Limited Liability Company Act or contract law; therefore, Sledge is bound by the terms of the Supplement Agreement's dispute-resolution provision and the resulting Joint Resolution.

¶27.   **AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., KING, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. KITCHENS, P.J., NOT PARTICIPATING.**

15