# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00434-COA

**JLS FARM PARTNERSHIP, CHESTER SHORT AND LINDA SHORT**                    **APPELLANTS**

**v.**

**'27 BREAK HUNTING CLUB, INC., '27 BREAK LLC AND KENNEDY PROPERTIES, LLC**                    **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/12/2022 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANTS: | JOHN THOMAS LAMAR III TAYLOR ALLISON HECK |
| ATTORNEYS FOR APPELLEES: | BARRY DOUGLAS HASSELL P. SCOTT PHILLIPS WILLIAM DRIBBEN MONTGOMERY |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 01/28/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND McDONALD, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1. This appeal arises from one of several claims brought by JLS Farm Partnership ("JLS"), Chester Short, Linda Short, and Jason Short ("the Shorts") against '27 Break LLC, Kennedy Properties LLC, '27 Break Hunting Club Inc. ("Break Hunting Club"), and several other hunting clubs in the Bolivar County Circuit Court.[1]  JLS and the Shorts produced

---

[1] This is the fourth appeal to arise out of the same chain of events, which we most recently addressed in *Short v. The Break Land Co. LLC*, No. 2022-CA-01180-COA, 2024 WL 4354694 (Miss. Ct. App. Oct. 1, 2024).

soybeans on land that they leased from '27 Break LLC and Kennedy Properties LLC (collectively, "Break/Kennedy"). After deer began to wander on their property and destroy their crops, they applied for and received a deer depredation permit through the Mississippi Department of Wildlife, Fisheries and Parks ("MDWFP"). After receiving several complaints from the surrounding hunting clubs, MDWFP investigated the matter and found that the Mississippi river levels were higher than normal, forcing the deer to move to higher ground. The MDWFP revoked the permit. JLS and the Shorts attempted to apply for a second permit; however, their landowners refused to agree to it. The landowners also chose not to renew the lease with JLS and the Shorts. JLS and the Shorts raised several claims relating to the lease agreement in their complaint. The circuit court ultimately granted summary judgments in favor of Break/Kennedy and Break Hunting Club. On appeal, JLS and the Shorts argue that the circuit court erred by granting the defendants' motions for summary judgment and not allowing JLS and the Shorts to respond to Break Hunting Club's motion.

**FACTS AND PROCEDURAL HISTORY**

¶2.     JLS,[2] operated by the Shorts, conducted farm operations on three parcels of land located in Washington and Bolivar Counties. The largest parcel was in Bolivar County. A portion of that land was leased from '27 Break LLC, and the other portion was leased from Kennedy Properties. JLS and the Shorts maintained the lease with Break/Kennedy for seventeen years. Break Hunting Club also leased land from Break/Kennedy to operate a

---

[2] JLS is a Mississippi general partnership between two Mississippi Corporations: Jessica Ag Inc. and Paislee Ag Inc.

2

hunting club, and this land was adjacent to the Shorts' land. Several other hunting clubs were in the area as well.

¶3. Beginning in 2017, the Shorts began to plant and harvest soybeans. They suffered severe crop losses due to deer coming from the surrounding hunting clubs and eating their harvest. They claimed, "The problem was so severe that three re-plantings were required, using enough seed to cover 400 total acres." After receiving consent from Break/Kennedy, JLS Farm Partnership applied for a deer depredation permit from the MDWFP. This permit was valid for one month and allowed them to kill deer out of season to preserve their crops. The Shorts were required to produce reports regarding their hunting activities and kills. MDWFP issued the permit on May 22, 2017. Chester revealed that on May 23, 2017, he killed ten deer. On May 25, 2017, he killed another ten to eleven deer.

¶4. MDWFP began receiving complaints from several hunting clubs in the area, including Break Hunting Club, Black Bayou Hunting Club Inc., and Huntington Point Hunting and Fishing Club Inc. Colonel Steve Adcock, chief of law enforcement for the MDWFP, checked the Shorts' daily reports, which stated that they were seeing over 200 deer in their field per night. This amount was alarming to Colonel Adcock. After an investigation, he discovered that the Mississippi River was higher than the permissible level. He testified, "Mr. Short's area was experiencing a high water event which was causing the deer in that area to congregate on Mr. Short's property." To prevent the Shorts from killing more displaced deer, the MDWFP revoked the deer depredation permit pursuant to Mississippi

3

Code Annotated § 49-7-77 (Rev. 2012).[3]

¶5.     JLS and the Shorts sued MDWFP on June 16, 2017.  As a result, they were granted a temporary restraining order, enjoining MDWFP from terminating the permit.  The Shorts were allowed to reapply for a permit on June 26, 2017.  However, unlike the first permit, this new permit would only allow the Shorts to kill does and was valid for only two weeks.  MDWFP also required the landlord's approval for the second permit.  The Shorts claimed that Lannie Philley, the corporate representative for Break/Kennedy, refused to sign the application due to all the complaints from the surrounding deer clubs.  To avoid any further disputes in the future, Break/Kennedy ultimately decided to terminate JLS and the Shorts' lease at the end of the 2017 production year.  Philley notified the Shorts about the termination on September 22, 2017.  The Shorts claimed that Philley also promised them a $20,000 reduction in rent.  This promise was never memorialized into writing, and the Shorts paid the full amount of rent that year.

¶6.     On May 29, 2020, JLS and the Shorts filed a complaint in the Bolivar County Circuit Court against '27 Break Hunting Club Inc.; '27 Break LLC; Kennedy Properties LLC; Black Bayou Hunting Club Inc. (later known as Black Bayou Land & Timber Co.); Huntington Point Hunting and Fishing Club Inc.; and John Does 1 through 50.  JLS and the Shorts alleged claims including tortious interference with business relations, tortious interference with contract, breach of contract, tortious breach of contract, breach of the covenant of good

---

[3] This statute makes it "unlawful to hunt, trap, take, frighten, or kill game or fur-bearing animals forced out of their natural habitat by high water or fire until they have been permitted to return to such habitat by recession of such water, or the extinguishing of such fire."  Miss. Code Ann. § 49-7-77.

faith and fair dealing, detrimental reliance/promissory estoppel, civil conspiracy, and defamation. They requested both compensatory and punitive damages.

¶7. An agreed scheduling order was entered on March 4, 2021. The deadline for joining additional parties or amending the pleadings was set for May 3, 2021. One day before this deadline, JLS and the Shorts filed a motion to amend the complaint to correct the name of one of the defendants. On May 5, 2021, an amended agreed scheduling order was entered. The new deadline for joining additional parties or amending the pleadings was set for May 17, 2021. On May 17, 2021, JLS and the Shorts filed a supplement to their motion to amend their complaint. They sought to add the additional defendant Mississippi Huntington Point Inc., which had been incorrectly named[4] in the first complaint, and they sought to remove Jason Short as a plaintiff. On June 8, 2021, the court granted leave to file the amended complaint. That same day, an agreed final judgment of dismissal with prejudice as to Jason Short's claims against the defendants was entered.

¶8. On September 10, 2021, almost four months after the amended deadline, JLS and the Shorts filed a motion for leave to file a second amended complaint. They sought "to add factual support to the existing claims and add a claim of private nuisance against the hunting club defendants and a negligence claim against 27 Break Hunting Club, Inc." All defendants opposed the motion. The court granted the motion for leave on November 5, 2021. JLS and the Shorts filed their second amended complaint on December 9, 2021. The court entered a second agreed scheduling order on February 18, 2022, and set the dispositive motion

---

[4] This defendant replaced Huntington Point Hunting and Fishing Club Inc.

5

deadline for October 21, 2022.

¶9.     On March 24, 2022, Break/Kennedy filed a motion for summary judgment. On August 5, 2022, JLS and the Shorts filed a motion for a continuance, requesting to continue the scheduled hearing on the motion for summary judgment. JLS and the Shorts argued:

> The discovery period in the Scheduling Order does not run until September 30, 2022. Additionally, the Plaintiffs have just now, less than 1 week prior to the scheduled hearing, been provided partial responses to its discovery that it served on these Defendants on June 1, 2022. For these reasons it would be wholly unfair and prejudicial to Plaintiffs to be forced to respond to Defendants Motion for Summary Judgment with incomplete discovery approximately 2 months prior to the discovery deadline and approximately 3 months prior to the dispositive motion deadline that were set by this Court. Basic fairness warrants that the Plaintiffs should receive a full discovery period and complete answers to discovery prior to being forced to respond to a Motion for Summary Judgment.

¶10.    On August 10, 2022, the court held a hearing on Break/Kennedy's motion for summary judgment and the motion for a continuance. On August 18, 2022, the court entered an order granting their motion for a continuance and held the motion for summary judgment in abeyance until all discovery had been completed.

¶11.    On October 21, 2022, Break Hunting Club timely filed its motion for summary judgment. On November 18, 2022, an agreed order dismissing Black Bayou Land & Timber Co. was entered. A later agreed order dismissing Mississippi Huntington Point Inc. was also entered, leaving '27 Break LLC, Kennedy Properties LLC, and '27 Break Hunting Club LLC as the last three defendants. The court ultimately granted summary judgment in favor of these defendants on December 6, 2022, by two separate judgments, and the court subsequently amended one of the final judgments (the one in favor of Break/Kennedy) on

6

December 12, 2022, clarifying JLS and the Shorts had responded to Break/Kennedy's motion for summary judgment.

¶12. In ruling, the court noted the discovery deadline had expired and found no genuine issue of material fact that would preclude summary judgment in favor of these three defendants. In the summary judgment in favor of Break Hunting Club, the court further held that summary judgment was appropriate because JLS and the Shorts had failed to respond to Break Hunting Club's motion for summary judgment. The court cited Uniform Civil Rule of Circuit and County Court Practice 4.02(2), which provides that a respondent to a motion for summary judgment must "reply within ten (10) days after service of movant's memorandum."

¶13. As to Break/Kennedy, the court acknowledged that "[o]n November 22, 2022, Plaintiffs filed Plaintiffs' Combined Response and Memorandum of Law to Defendant '27 Break LLC and Defendant Kennedy Properties, LLC's Motion for Summary Judgment." However, the court held, "Based upon the facts and law as set forth in [Break/Kennedy's] motion and memorandum, as well as arguments of counsel, the [c]ourt finds that there is no genuine issue of material fact which would preclude entry of summary judgment."

¶14. On December 20, 2022, JLS and the Shorts filed two motions for reconsideration of the December 6 and 12 summary judgments. They argued, "While the Plaintiffs acknowledge UCRCCC 4.02, respectfully, the Court has not followed said rule to date." JLS and the Shorts claimed that it was unfair and prejudicial to suddenly begin enforcing the Uniform Rules against them and yet not enforce the rules when Break Hunting Club

7

allegedly filed its motion for summary judgment outside the deadline. JLS and the Shorts also asserted that they showed material facts were in genuine dispute. The court entered separate orders denying the motions for reconsideration on March 14, 2023. The court held in part:

> This Court properly granted [Break Hunting Club's] MOTION FOR SUMMARY JUDGMENT because Plaintiffs failed to raise a genuine issue of material fact; therefore, [Break Hunting Club] is entitled to judgment as a matter of law. However, the Court would be remiss if it did not at least acknowledge that it has indeed noticed Plaintiffs' untimely motion practices, at least as they relate to this cause. Notwithstanding Plaintiffs' motion practices, this Court, giving the Plaintiffs the benefit of the doubt once more, offered Plaintiffs an opportunity to present oral arguments in support of their MOTION FOR RECONSIDERATION. Yet, some TWO (2) MONTHS later, Plaintiffs have not even acknowledged the Court's offer, much less set the motion for hearing.

The court similarly reiterated its finding that no genuine issue of material fact existed as to the claims against Break/Kennedy. Aggrieved, JLS and the Shorts now appeal.

## STANDARD OF REVIEW

¶15. "This Court reviews an appeal from summary judgment de novo." *Cromwell v. Williams*, 333 So. 3d 877, 882 (¶7) (Miss. Ct. App. 2022) (citing *Venture Inc. v. Harris*, 307 So. 3d 427, 431 (¶14) (Miss. 2020)). "Summary judgment is appropriate where 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting M.R.C.P. 56(c)) However, "[t]he mere existence of some alleged factual dispute between the parties . . . will not defeat an otherwise properly supported motion for summary judgment; '[t]he dispute

8

must be genuine, and the facts must be material.'" *Id.* (quoting *Smith v. City of Southaven*, 308 So. 3d 456, 461 (¶16) (Miss. Ct. App. 2020)).

## DISCUSSION

### I.     Motions for Summary Judgment

¶16.    JLS and the Shorts argue that the court erred in granting the motions for summary judgment because genuine issues of material fact remained regarding the alleged liability for breach of contract, tortious breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel.

### A.     Breach of Contract

¶17.    Regarding the breach of contract claims, JLS and the Shorts specifically point to Section 7(i) in their lease agreement with Break/Kennedy, which provided in pertinent part:

> LESSOR and LESSEE agree that LESSEE shall:
>
> Consistent with the accepted practice, or as may be otherwise specifically provided therewithin, be the sole judge and have and enjoy absolute control of timing, methods, and extent of actual planting, cultivation, and harvesting operations conducted on the Leased Premises, as well as all incidental operations directly connected therewith.

They argued that "[p]er the Lease Agreement, [Break/Kennedy] was contractually obligated to either (1) agree to the second-round depredation permit; or (2) inform the MDWFP that, pursuant to its lease agreement with the Shorts, its consent was not required." JLS and the Shorts claimed that by failing to do so, Break/Kennedy breached the contract and denied them of their right to have absolute control over their harvesting operations.

¶18.    "A breach-of-contract case has two elements: (1) the existence of a valid and binding

9

contract, and (2) a showing that the defendant party has broken or breached it." *Walters Invs. Inc. v. Spell*, 333 So. 3d 61, 70 (¶23) (Miss. Ct. App. 2021) (quoting *Bissette v. Univ. of Miss. Med. Ctr.*, 282 So. 3d 507, 515 (¶17) (Miss. Ct. App. 2019)). "When interpreting a contract, the court must first determine if the contract is ambiguous." *Id.* (quoting *Liberty Mut. Fire Ins. Co. v. Fowlkes Plumbing L.L.C.*, 290 So. 3d 1257, 1259 (¶5) (Miss. 2020)). "In making that determination, the Court must review the express wording of the contract as a whole." *Id.* (quoting *Sledge v. Grenfell Sledge & Stevens PLLC*, 263 So. 3d 655, 664 (¶24) (Miss. 2018)). "If the contract is unambiguous, the intention of the contracting parties should be gleaned solely from the wording of the contract[,] and parol[] evidence should not be considered." *Id.* (quoting *Sledge*, 263 So. 3d at 664 (¶24)). "[W]here no ambiguity exists, we "must 'accept the plain meaning of a contract as the intent of the parties . . . .'" *Id.* (quoting *Liberty Mut. Fire Ins.*, 290 So. 3d at 1259 (¶5)).

¶19.     Appellate courts employ a three-part test to interpret a contract:

> First, we look to the "four corners" of the agreement and review the actual language the parties used in their agreement. When the language of the contract is clear or unambiguous, we must effectuate the parties' intent. However, if the language of the contract is not so clear, we will, if possible, harmonize the provisions in accord with the parties' apparent intent. Next, if the parties' intent remains uncertain, we may discretionarily employ canons of contract construction. Finally, we may also consider parol or extrinsic evidence if necessary.

*Chapel Hill LLC v. SoilTech Consultants Inc.*, 112 So. 3d 1097, 1099-1100 (¶10) (Miss. Ct. App. 2013) (quoting *Williams v. Williams*, 37 So. 3d 1196, 1200 (¶10) (Miss. Ct. App. 2009)). "When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses." *Facilities Inc. v. Rogers-Usry Chevrolet Inc.*, 908 So. 2d 107,

10

111 (¶10) (Miss. 2005) (citing *Brown v. Hartford Ins. Co.*, 606 So. 2d 122, 126 (Miss. 1992)). "Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy." *Id*. (citing *Simmons v. Bank of Miss.*, 593 So. 2d 40, 42-43 (Miss. 1992)). "Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue." *Id*.

¶20. When applying the three-part test in summary judgment cases, our Supreme Court has held:

> [T]he reviewing Court need not go through the entire three-step analysis; the Court should determine only whether the contract is ambiguous. Questions of contract construction and ambiguity are questions of law that are committed to the court rather than questions of fact committed to the fact finder. If the reviewing Court finds the terms of the contract to be ambiguous or subject to more than one interpretation, the case must be submitted to the trier of fact, and summary judgment is not appropriate.

*Spell*, 333 So. 3d at 70-71 (¶25) (quoting *Epperson v. SOUTHBank*, 93 So. 3d 10, 17 (¶20) (Miss. 2012)).

¶21. Here, neither party asserts that the clause in question is ambiguous, but they disagree about whether the clause imposed a duty on Break/Kennedy to approve the second-round depredation permit. However, "[t]he mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." *Id*. at 70-71 (¶26) (quoting *Royer Homes of Miss. Inc. v. Chandeleur Homes Inc.*, 857 So. 2d 748, 752 (¶10) (Miss. 2003)). We find that there is no express language in Section 7(i) of the lease agreement that would have imposed a duty on Break/Kennedy to approve this second permit.

11

In fact, Section 7(i) makes no mention of any duties that were imposed on Break/Kennedy. The clause provides that the lessees, JLS and the Shorts, had "absolute control of timing, methods, and extent of actual planting, cultivation, and harvesting operations."

¶22. Additionally, another clause within the lease agreement applies to this analysis. Section 4 of the lease agreement provides, "It is understood that LESSEE is familiar with the farm being leased and acknowledges and understands any possible hazards connected to said farm due to *acts of nature such as flooding*, fire, droughts, etc. and *voluntarily assumes those risks*." (Emphasis added). The high water level of the Mississippi River was the underlying cause of the deer coming on the property and destroying the crops. This later triggered the MDWFP to revoke the first depredation permit in compliance with section 49-7-77. JLS and the Shorts expressly assumed the risk of an "act of nature" that could possibly hinder the success of their farming operation. However, no express language provided that Break/Kennedy was somehow obligated to resolve this issue for them or make efforts to guarantee the success of their farming operation by agreeing to an additional depredation permit. Accordingly, we find that Break/Kennedy did not breach the contract by refusing to sign the application for a second depredation permit.

¶23. Finally, since there was no breach of contract, we must also hold that there was no tortious breach of contract. *See Braidfoot v. William Carey College*, 793 So. 2d 642, 655 (¶46) (Miss. Ct. App. 2000) ("Tortious breach of contract requires, *in addition to a breach of contract*, some intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort."). Accordingly, we find that the court did not err in granting summary

judgment on the claims of breach of contract and tortious breach of contract.

## B. Breach of Duty of Good Faith and Fair Dealing

¶24. Turning to the claim of a breach of duty of good faith and fair dealing, JLS and the Shorts assert that Break/Kennedy did not agree to the permit and ultimately chose to terminate the lease due to the complaints they received from their tenant Break Hunting Club and other nearby hunting clubs.

¶25. We acknowledge that "[a]ll contracts contain 'an implied covenant of good faith and fair dealing in performance and enforcement.'" *Walters Invs. Inc.*, 333 So. 3d at 71-72 (¶31) (quoting *Caplinger v. Whitney Bank*, 293 So. 3d 307, 312 (¶18) (Miss. Ct. App. 2020)). This Court has previously held:

> Good faith means "the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party." *Cenac* [*v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992).] In contrast, bad faith requires "a showing of more than bad judgment or negligence; rather, 'bad faith' implies some conscious wrongdoing 'because of dishonest purpose or moral obliquity.'" *Univ. of S. Miss. v. Williams*, 891 So. 2d 160, 170-71 (¶24) (Miss. 2004). However, a party does not breach the "implied covenant of good faith and fair dealing when the party took only those actions which were duly authorized by the contract." *Limbert* [*v. Miss. Univ. for Women Alumnae Assoc. Inc.*, 998 So. 2d 993, 999 (¶14) (Miss. 2008).]

*Rasdon v. Thrash*, 225 So. 3d 557, 560 (¶9) (Miss. Ct. App. 2017) (quoting *Ravenstein v. Community Trust Bank*, 141 So. 3d 396, 403-04 (¶27) (Miss. Ct. App. 2013)).

¶26. "[T]he claim of breach of the covenant of good faith . . . asserts a [claim in] tort, one flowing from tortious breach of contract." *Daniels v. Parker & Assocs. Inc.*, 99 So. 3d 797, 801 (¶13) (Miss. Ct. App. 2012) (quoting *Lippincott v. Miss. Bureau of Narcotics*, 856 So. 2d 465, 468 (¶11) (Miss. Ct. App. 2003)). "Thus, to have a breach of the duty of implied

13

good faith and fair dealing[,] there must first be an existing contract . . . ." *Id.* As previously established, no language in the lease agreement imposed a duty on the defendants, express or implied, to agree to the depredation permit. The lease agreement provided that JLS and the Shorts would enjoy absolute control over the operation of the leased premises. We find no breach of the implied duty of good faith and fair dealing by Break/Kennedy or Break Hunting Club.

¶27. Additionally, Break/Kennedy could not have acted in bad faith when they terminated the lease at the end of the 2017 crop year because this action was expressly authorized by the contract. Section 7(z) of the lease agreement provided, "LESSEE agrees that this lease is a one-year lease that expires on December 31, 2017." JLS and the Shorts were aware that this was a one year lease when they entered into the lease agreement, and Break/Kennedy was under no legal duty to enter into a new lease upon its expiration. Accordingly, we find that the court did not err in granting summary judgment on the claims of breach of the duty of good faith and fair dealing.

### C.    Promissory Estoppel

¶28. As to their promissory estoppel claim, JLS and the Shorts claimed that Philley made an oral promise that he would give them a $20,000 reduction in rent for the 2017 crop year. They claimed they relied on this promise to their detriment.

¶29. "[T]he elements of promissory estoppel are: (1) the making of a promise, even though without consideration, (2) the intention that the promise be relied upon and in fact is relied upon, and (3) a refusal to enforce it would virtually sanction the perpetuation of fraud or

14

would result in other injustice." *Beasley v. Sutton*, 192 So. 3d 325, 335 (¶33) (Miss. Ct. App. 2015) (quoting *Thompson v. First Am. Nat'l Bank*, 19 So. 3d 784, 788 (¶19) (Miss. Ct. App. 2009)). We note that "estoppel should only be used in exceptional circumstances and must be based on public policy, fair dealing, good faith, and reasonableness." *Serv. Elec. Supply Co. v. Hazlehurst Lumber Co.*, 932 So. 2d 863, 871 (¶23) (Miss. Ct. App. 2006) (quoting *Powell v. Campbell*, 912 So. 2d 978, 982 (¶12) (Miss. 2005)).

¶30. The record reveals that there may have been a promise made by Philley to the Shorts to reduce rent. Even if a promise were made, the problem lies in the reliance element of the claim. Here, the alleged promise was not in fact relied upon by JLS and the Shorts. There is undisputed evidence that they chose to pay the full amount of rent that year. Chester Short confirmed that he did not inquire about the reduction before paying the full amount. He also revealed that he chose to comply with the original contract, which he knew did not require a rent reduction. During his deposition, he testified:

> A. But we did pay the whole rent. We didn't reduce the $20,000. Because we – whatever our contract said, we wanted to be in compliance with whatever we said we were going to do. And we paid whatever it was. It was their choice whether they wanted to reimburse us. And we still ain't got reimbursed.
>
> Q. Right.
>
> A. But it wasn't in the contract.

Without the reliance element, promissory estoppel does not apply here. Accordingly, we find that the court did not err in granting summary judgment on the promissory estoppel claim.

## II. Response to Break Hunting Club's Motion for Summary Judgment

¶31. JLS and the Shorts also assert that they should have been allowed more time to

respond to Break Hunting Club's motion for summary judgment because the court had not consistently enforced the deadlines in the scheduling order and the Uniform Civil Rules of Circuit and County Court Practice. Break/Kennedy filed a motion for summary judgment on March 24, 2022, and Break Hunting Club filed a motion for summary judgment on October 21, 2022. JLS and the Shorts did not file their response to Break/Kennedy's motion until November 22, 2022, and they never filed a response to Break Hunting Club's motion. Contrary to what they assert, JLS and the Shorts were never deprived of an opportunity to file a response. The record reflects that JLS and the Shorts were simply dilatory. They had ample time to file their response; however, they chose to wait several months to respond to Break/Kennedy and to not respond at all to Break Hunting Club. Accordingly, we find this issue is without merit.

## CONCLUSION

¶32.    Based on our review of the record, we find that the circuit court did not err in granting summary judgments in favor of these defendants for the claims asserted by JLS and the Shorts. The deposition excerpts, pleadings, and other documents show no genuine issue of material fact; '27 Break LLC, Kennedy Properties LLC, and '27 Break Hunting Club Inc. were entitled to judgment as a matter of law. Accordingly, we affirm the judgments of the Bolivar County Circuit Court.

¶33.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, McCARTY, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR. LAWRENCE, J., NOT PARTICIPATING.**

16